UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-00601-FDW

| | |
|---|---|
| RON CHRISTOPHER ROBBINS, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Claimant Ron Christopher Robbins' ("Claimant") Motion for Summary Judgment (Doc. No. 16), filed May 3, 2022, and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's (the "Commissioner") Motion for Summary Judgment and Memorandum in Support (Docs. Nos. 17, 18), filed June 17, 2022. Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on his application for a Period of Disability and Disability Insurance Benefits ("DIB").

The motions are now ripe for review. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Claimant's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

**I. BACKGROUND**

Claimant filed an application for Title II benefits on June 9, 2020. (Tr. 15). Claimant alleges disability beginning January 1, 2020. (Tr. 15). After his application was denied initially and upon reconsideration, Claimant requested a hearing. (Tr. 15). After a telephone hearing on

1

July 13, 2021, on July 29, the Administrative Law Judge ("ALJ") issued an unfavorable decision, finding Claimant was not disabled within the meaning of the Social Security Act. (Tr. 15–27).

During step one of the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, the ALJ found Claimant had not engaged in substantial gainful activity since January 1, 2020. (Tr. 17). At step two, the ALJ found Claimant to have the following severe impairments: "hypertension, lumbar degenerative disc disease, bilateral hallux valgus, bilateral plantar fasciitis, bilateral pes planus, left knee degenerative joint disease, right knee chondromalacia, arteriosclerotic heart disease, depression, anxiety, migraines, tinnitus[.]" (Tr. 17). At step three, the ALJ determined Claimant did not have an impairment, or a combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1. (Tr. 18–20). Before proceeding to step four, the ALJ then found Claimant had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [F]requent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent crouching; occasional kneeling; no crawling; need the ability to alternate between sitting and standing hourly while remaining on task (no more than 2-3 minutes per hour off task for the position change); unskilled work performed in 2 hour segments; occasional contact with the public; no teamwork or tandem work required for task completion; non production pace (non automated/conveyor pacing); no conflict resolution or crisis management; noise should not [be] above the moderate level as defined by DOT/SCO.

(Tr. 20). Evaluating step four, the ALJ found Claimant was unable to perform any past relevant work. (Tr. 25). At step five, in response to a hypothetical that factored in Claimant's age, education, work experience, and RFC, the vocational expert ("VE") testified that Claimant could not perform his past relevant work as a human resource technician but could perform other jobs that exist in significant numbers in the national economy. (Tr. 56–58). Specifically, the VE found jobs such as mail clerk, folder garment, and hand bander were appropriate for Claimant. (Tr. 57).

Thus, the ALJ concluded Claimant was not disabled under the Social Security Act from January 1, 2020, the date the application was filed, through the date of the ALJ's decision. (Tr. 27).

Claimant's subsequent request for review by the Appeals Council was denied, and as a result, the ALJ's decision became the final decision of the Commissioner. (Tr. 5–7). Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of the final decision of the Social Security Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401, 28 L. Ed. 2d 842 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of

evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

4

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." [Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)] (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

5

III. ANALYSIS

On appeal, Claimant raises one challenge with multiple subparts: (1) the ALJ's RFC is not supported by substantial evidence, due to (a) the improper dismissal of prostatitis and varicocele as non-severe impairments; (b) the ALJ's failure to conduct a function-by-function analysis of Claimant's (i) knee impairments and (ii) foot impairments; and (c) the ALJ's application of an incorrect legal standard for evaluating Claimant's subjective symptomology. As discussed below, because the ALJ applied the correct legal standards and the decision is supported by substantial evidence, Claimant's assignments of error are overruled. The Court addresses each alleged assignment of error in turn.

A. The ALJ's RFC

An ALJ is solely responsible for assessing Claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," despite impairments and related symptoms. SSR 96-8p, 1996 WL 37484, at *1 (July 2, 1996); see also 20 C.F.R. § 404.1545(a)(1). Moreover, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion." Mascio, 780 F.3d at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,478).

1. Prostatitis and Varicocele

Claimant alleges the ALJ improperly dismissed prostatitis and varicocele as non-severe impairments, resulting in an inadequate RFC determination. The Commissioner argues the ALJ's determination of these impairments as non-severe is proper because Claimant did not list prostatitis and varicocele in his adult disability report and did not mention prostatitis or varicocele at the hearing. The Commissioner also argues that if prostatitis or varicocele should have been

6

considered severe, the omission is a harmless error because Claimant failed to meet his burden of showing how these impairments resulted in any functional limitation.

In regard to the first issue, neither the Supreme Court nor the Fourth Circuit has ruled on whether a claimant's failure to raise impairments, either in adult disability reports or during the administrative hearing, waives the right to raise the issue in district court.[1] However, the Ninth Circuit, in Meanel v. Apfel, 172 F.3d 111 (9th Cir. 1999), found a claimant unable to raise an issue regarding insufficiency in jobs within her local area due to her failure to raise the issue at the administrative hearing. The Ninth Circuit held that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." Id. at 1115. In fact, this Court has cited and relied upon the Ninth Circuit's decision in Meanel to reject Appointments Clause claims that were not raised at the administrative level.[2]

Here, Claimant did not list prostatitis or varicocele in his adult disability report, nor did he mention these impairments during his hearing. To that end, Claimant asserts the ALJ's line of questioning was limited, and that he responded to all questions the ALJ asked him. After review of the hearing transcript, the ALJ prompted Claimant multiple times to clarify and elaborate on the

---

[1] Many circuits have held that claimants must raise all issues and impairments he or she wishes to bring in federal court at the administrative level. See, e.g., Robinson v. Apfel, 232 F.3d 896, 896 (9th Cir. 2000) (holding claimant waived judicial review regarding issue of her amputated finger due to failure to raise issue at administrative hearing); Street v. Barnhart, 133 Fed. Appx. 621, 2005 WL 1164202 at *6 (11th Cir. 2005) (stating that failure to list mental impairment or intellectual functioning issues in application and failure to testify to mental impairment or intellectual functioning issue could dispose of his claim); Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996) (finding that an administrative law judge does not need to investigate a claim not presented in claimant's application and not offered at the hearing); Hernandez-Ramirez v. Astrue, 2009 WL 2876771 (M.D. Fla. Sept. 06, 2009) (holding that claimant's failure to mention right knee impairment before law judge at the hearing was sufficient to defeat the claim). The Fourth Circuit has held that arguments are waived if not made before the appeal. Shinaberry v. Saul, 952 F.3d 113, 124 n.5 (holding that claimant waived review of claim due to claimant's failure to raise an argument at district court or appeals court until her reply brief). Other courts have simply stated that the failure to allege impairments in the adult disability report and during the hearing supports an ALJ's finding of impairment as non-severe. See, e.g., Bradley v. Astrue, 2013 WL 1077601 (S.D. W. VA. Jan. 15, 2013) (proposing reviewing court find claimant's back condition as non-severe due to lack of evidence in record, failure to allege impairment in application, and failure to raise issue at hearing).

[2] See, e.g., Petty v. Saul, 2020 WL 41436 (W.D.N.C. Mar. 29, 2020); Garrison v. Berryhill, 2018 WL 4924554 (W.D.N.C. Oct. 10, 2018); Shipman v. Berryhill, 2019 WL 281313 (W.D.N.C. Jan. 22, 2019).

7

impairments impacting his health and ability to work. (Tr. 45–46). Each time, Claimant responded with a brief statement, which provided the ALJ with insufficient information regarding his impairments. (Tr. 45–46). Even in Claimant's brief answers, he does not reference prostatitis or varicocele as impairments that impacted his ability to work. (Tr. 45–55). Further, at the conclusion of ALJ's questioning, Claimant's counsel had the opportunity to engage Claimant in a line of questioning that would prompt Claimant to testify to these impairments. (Tr. 45–48, 52–54). Thus, Claimant had multiple opportunities to discuss and raise prostatitis and varicocele as impairments that significantly impacted his ability to work, but he did not. (Tr. 45–55). Instead, Claimant only mentioned his inability to concentrate and other impairments that were listed in his adult disability report. (Tr. 46). As a result, he is unable to argue the ALJ erred in his classification of prostatitis and varicocele as non-severe, as Claimant failed to raise these issues in his adult disability report and again during the hearing, thus precluding Claimant from raising them now.

Next, the Commissioner argues that even if the ALJ should have considered prostatitis and varicocele to be severe impairments, his failure to do so was harmless error. The claimant bears the burden of proof at steps one through four, including proving an impairment has more than a minimal functional limitation on their ability to work. See Monroe, 826 F.3d at 179–80. Further, a claimant attacking an administrative decision must prove how the error harmed their case. See Shinseki v. Sanders, 556 U.S. 396, 407–10, 129 S. Ct. 1696, 173 L. Ed. 2d 532.

In this case, Claimant did not list prostatitis or varicocele in his adult disability report, and at his hearing he did not testify as to how these conditions limited him from working. (Tr. 46, 182). Thus, the ALJ was limited to review of Claimant's medical records, which contained no evidence relating to the impact of prostatitis and varicocele on his ability to work. (Tr. 18, 278–79, 295, 300, 456, 478). Based on his review of the record, the ALJ found there was no evidence

8

of persistent work-related symptoms or functional limitations stemming from either condition. (Tr. 18). As support for his classification, the ALJ stated Claimant worked with these impairments for many years, and neither his testimony nor the record indicates how they limited his ability to do so. (Tr. 18). Therefore, Claimant has not met his burden of establishing prostatitis and varicocele had more than a minimal functional limitation on his ability to work. Thus, even if the ALJ erred in classifying prostatitis and varicocele as non-severe, such an error was harmless.

Accordingly, the Court rejects Claimant's allegation that the ALJ improperly classified prostatitis and varicocele and finds that substantial evidence supports the ALJ's determination that prostatitis and varicocele were non-severe impairments.

### 2. Function-by-Function Analysis

Claimant next challenges the ALJ's decision by arguing the ALJ failed to engage in a proper function-by-function analysis. Before proceeding to step four of a disability determination, the ALJ must assess the claimant's RFC, or what a claimant can still do, factoring in "all of [the claimant's] medically determinable impairments of which [the ALJ] is aware." 20 C.F.R. § 416.945(a)(2). In determining a claimant's RFC, the ALJ must identify functional limitations and restrictions that result from an individual's medically determinable abilities and assess the individual's abilities on a function-by-function basis. Lewis, 858 F.3d at 861–862 (quoting Mascio, 780 F.3d at 636); SSR 96-8p, 1996 WL 374184. In Mascio, the Fourth Circuit remanded because the ALJ did not conduct a function-by-function analysis of the claimant's moderate mental limitations. 780 F.3d 632. Remand was appropriate because the ALJ's analysis was extremely inadequate and "frustrate[d] meaningful review." Id. However, the Fourth Circuit was careful to explicitly reject a *per se* rule requiring remand in the absence of an explicit function-by-function analysis. See id. at 636. Instead, the Court stated that this function-by-function analysis was not

9

necessary when functions are either irrelevant or uncontested, and remand in such cases would be futile. Id.

In the instant case, Claimant asserts the ALJ did not conduct a proper function-by-function analysis regarding his knee and foot impairments. Conversely, the Commissioner argues the RFC related to Claimant's knee and foot impairments is supported by substantial evidence, and additional function-by-function analysis was not required. Each will be addressed in turn.

### i. Knee Impairments

Claimant first alleges the ALJ did not properly conduct a function-by-function analysis of Claimant's knee impairments. Specifically, Claimant asserts that the ALJ did not analyze how the RFC comports with ongoing pain symptoms and Claimant's testimony that he was being evaluated for total knee replacement surgery. In addition, Claimant states that the ALJ did not specifically analyze how the medical evidence supported a finding that Claimant could spend most of the day standing and walking in a work capacity.

Here, the ALJ provided sufficient discussion and consideration of Claimant's impairments in his RFC analysis. (Tr. 22). In his opinion, the ALJ included an overview of Claimant's knee ailments as evidenced by the medical records and Claimant's subjective complaints, and the ALJ then explained how each finding was represented in his RFC determination. (Tr. 22–24). The ALJ discussed how he took these findings into consideration when determining Claimant was "limited to light work with frequent crouching, occasional kneeling, and no crawling." (Tr. 22). The ALJ also accounted for Claimant's subjective complaints of pain with prolonged sitting and standing by adding a sit/stand option into the RFC. (Tr. 22). In considering Claimant's use of a cane, the ALJ noted that it had not been medically prescribed, nor was it supported by the medical record overall. (Tr. 22).

10

Additionally, the ALJ stated that he found State agency medical consultants Dr. Melvin L. Clayton and Dr. Michael Koch's physical RFC opinions, which discussed their examination of the medical records concerning Claimant's knee ailments, persuasive in making his RFC determination. (Tr. 24). Based on the State agency medical consultants' opinions and the ALJ's inclusion of additional limitations, the ALJ found that Claimant was limited to light work with frequent climbing of ramps and stairs, frequent crouching, occasional kneeling, and no climbing of ladders, ropes, or scaffolds. (Tr. 20, 24).

Finally, Claimant asserts the ALJ failed to analyze how his RFC comports with his evaluation for knee surgery. The Court disagrees. The ALJ's opinion clearly explains why he did not find the reports from Claimant's knee surgeon persuasive, as Claimant's knee surgeon did not evaluate the combined effects of all of Claimant's impairments when stating that Claimant has no work restriction. (Tr. 25).

Thus, the ALJ performed a proper function-by-function analysis, in accordance with the requirements established under <u>Mascio</u>, because he examined all available evidence regarding Claimant's knee impairments and engaged in a detailed explanation of how each finding was considered and represented in his RFC determination. See <u>Mascio</u>, 780 F.3d at 636. Therefore, contrary to Claimant's allegation, the ALJ provided sufficient discussion and consideration of Claimant's knee impairments in his RFC determination, and the RFC is supported by substantial evidence.

### ii. Foot Impairments

Claimant also alleges the ALJ did not properly conduct a function-by-function analysis of his foot impairments. Specifically, Claimant asserts that the ALJ did not analyze how the RFC comports with ongoing pain symptoms and the deformities of Claimant's feet. In addition,

11

Claimant states that the ALJ did not specifically analyze how the medical evidence supported a finding that Claimant could spend most of the day standing and walking in a work capacity.

Again, the ALJ provided sufficient discussion and consideration of Claimant's foot impairments in his RFC analysis. (Tr. 22–23). Here, the ALJ examined all available evidence regarding Claimant's foot impairments, including subjective complaints, and explained how each finding was considered and represented in his RFC determination. (Tr. 22–24). The ALJ referenced reports by medical professionals that indicated diagnoses and treatments prescribed to Claimant. (Tr. 22–23). The ALJ noted that subsequent records, following Claimant's prescriptions for orthotics and a night split, did not include any specific complaints related to Claimant's feet. (Tr. 23). Despite this, the ALJ still considered Claimant's foot impairments in determining exertional and postural limitations, such as limiting Claimant to light work and requiring a sit/stand option. (Tr. 22–23). Lastly, the ALJ stated that he found State agency medical consultants Dr. Clayton and Dr. Koch's opinions, which included the examination of the medical record regarding Claimant's foot impairments, persuasive in making his RFC determination. (Tr. 24). Based on the State agency medical consultants' opinions and the ALJ's inclusion of additional limitations, the ALJ found that Claimant was limited to light work with frequent climbing of ramps and stairs, frequent crouching, occasional kneeling, and no climbing of ladders, ropes, or scaffolds. (Tr. 20, 24). Due to this explanation, the Court was not "left to guess about how the ALJ arrived at his conclusions[,]" and finds the ALJ provided a sufficient discussion and consideration of Claimant's foot impairments in his RFC analysis in accordance with the requirements set forth in Mascio, 780 F.3d at 637.

As discussed above, the ALJ engaged in a narrative discussion that showed how the evidence supported his conclusion. Further, the ALJ performed a proper function-by-function

12

analysis because he examined all available evidence regarding Claimant's foot impairments and engaged in a detailed explanation of how each finding was considered and represented in his RFC determination. Thus, this Court rejects Claimant's arguments and finds the ALJ applied the correct legal standard, and his RFC findings and explanations are supported by substantial evidence.

### 3. Claimant's Subjective Symptomology

Lastly, Claimant asserts the ALJ erred by employing an incorrect legal standard for evaluating his subjective symptomology, and because he did not sufficiently explain, nor did he have substantial support for, his RFC assessment. The Commissioner argues the ALJ properly evaluated all the medical opinions and subjective evidence under the appropriate legal standard and sufficiently explained his findings.

To establish disability by non-exertional pain, a claimant first must establish "objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (citing 42 U.S.C. § 423(d)(5)(A)). If such evidence is present, the ALJ is then required to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595. Claimant is correct in stating that claimants are "entitled to rely exclusively on subjective evidence to prove" the second step in the test. Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006). However, the ALJ is required to assess credibility based on all available evidence, not just Claimant's subjective allegations of pain. See Craig, 76 F.3d at 595; 20 C.F.R. §§ 416.929(c), 404.1529(c).

Claimant contends the ALJ applied an incorrect legal standard when evaluating Claimant's subjective symptomology. In this case, the ALJ considered the symptoms Claimant testified to

13

and evaluated the entire medical record. (Tr. 21–24). Upon review of the record, the ALJ found the subjective symptomatology of Claimant was not "entirely consistent with the medical evidence." (Tr. 21). The ALJ proceeded to elaborate on the inconsistencies between the symptoms described by the Claimant and the medical reports available. (Tr. 21–24). First, Claimant testified that he had four to five migraines per week, but, upon review of the medical record, Claimant reported only one to two migraines per week to his neurologist, and the migraines were not mentioned in Claimant's physical exam, impression, or plan. (Tr. 23–24). Similarly, Claimant testified to using a cane since July, 2020, due to his knee problems, but no medical documentation establishing a need for the cane existed. (Tr. 22).

However, even with the inconsistencies, the ALJ explained how his RFC analysis accommodated Claimant's subjective complaints of pain. (Tr. 21–24). For instance, the ALJ determined Claimant required a sit/stand option to accommodate his pain with prolonged sitting or standing, and Claimant was limited to working in environments with noise not exceeding the moderate level due to his subjective complaints related to his hearing. (Tr. 23). Similarly, the ALJ discussed Claimant's bilateral foot pain in his determination of Claimant's exertional and postural limits. (Tr. 23). Lastly, the ALJ noted Claimant's testimony was "vague" and lacked details regarding his symptoms, which forced the ALJ to rely heavily on the medical records available, many of which were not consistent with his subjective complaints. (Tr. 21–24). Thus, this Court finds the ALJ properly evaluated Claimant's symptoms in accordance with the applicable standard by considering both Claimant's subjective testimony and the medical record overall.

After careful review of the ALJ's opinion and the record overall, the Court is satisfied the ALJ met his burden of engaging in a narrative discussion that shows how the evidence supported his RFC assessment. The Court finds Claimant's assignments of error are without merit and holds

the ALJ's decision is in accordance with the applicable legal standards and supported by substantial evidence.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that for the foregoing reasons, Claimant's Motion for Summary Judgment (Doc. No. 16) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 17) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: March 28, 2023

Frank D. Whitney
United States District Judge